## A11A0843. LAUN v. AXA EQUITABLE LIFE INSURANCE COMPANY et al.

(716 SE2d 760)

ADAMS, Judge.

Dr. Frederick Laun, an orthopaedic and hand surgeon, seeks a declaratory judgment against AXA Equitable Life Insurance Company ("Equitable") and Disability Management Services ("DMS"). Laun claims that Equitable, which provides his disability income insurance, and DMS, Equitable's third-party administrator, improperly refused to change his disability insurance designation from sickness to injury, which would result in increased benefits. The Superior Court of Fulton County granted summary judgment in favor of the defendants, and Laun appeals. Finding no error, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Laun secured a disability income insurance policy with Equitable on January 28, 1983, when he was 40 years old. The policy provides monthly benefits for Laun in the event of a "total disability" that leads to "the complete inability of the Insured, because of injury or sickness, to engage in the Insured's regular occupation." It defines two types of total disability, and they are treated differently. "Accident Total Disability," defined as "total disability resulting from injury," provides lifetime benefits. On the other hand, "Sickness Total Disability," which includes "medical or surgical treatment of . . . any sickness or disease," only provides benefits through age 65. The policy states that "[t]otal disability caused *or contributed to* by [a policy-defined sickness] will not be considered accident total disability." (Emphasis supplied.)

In October 2003, Laun was diagnosed with bilateral basal osteoarthritis of the thumbs, a degenerative joint condition that caused him significant pain in the base of his thumbs during and after the performance of surgical work. He stopped performing surgery in November 2003, and on November 9, he submitted a claim for total disability. DMS approved the claim, classified the claim as "Sickness Total Disability," and began providing benefits to Laun in February 2004. At about the same time, Laun began to undergo surgery for his condition. He had surgery on his left thumb in November 2003, surgery on his right thumb in January 2004, and two additional surgeries in August 2004.

Then, on November 5, 2004, while he was still recovering from

surgery and had not resumed his surgical practice, Laun fell and sprained his right wrist. Acknowledging, even before his wrist injury, that his chances of returning to work as a surgeon in the near future were "very minimal," and the chance of performing surgery in the years to come was "possible, but not probable," Laun closed his office to patients on November 30, 2004.

On December 13, 2004, Laun sent a letter to Equitable and DMS informing them of his wrist injury and his prediction that, if his condition did not improve, he would never be able to return to performing surgery, and he would expect to change his disability status from sickness to injury. On March 15, 2005, Laun requested that Equitable reclassify his disability under the accident total disability clause, explaining as follows:

> . . . The base of my thumbs, at this time, have not improved sufficiently that I would be able to do my normal surgical procedures as an Orthopaedic and Hand Surgeon. It has been my hope, but not my expectation, that I would be able, at some time, to have the base of my thumbs recover sufficiently to allow me to perform surgery in some setting. At this time, I believe that my right wrist is what is the most incapacitating of my problems and[,] therefore, feel that I am entitled to file under the trauma clause of my contract with you. . . .

He added that it had been "well over a year" since he had performed surgery, but he believed that the wrist injury "incapacitated [him] in ways that the [thumb condition] had not incapacitated [him]." Laun was 62 years old in 2005, and the sickness total disability benefits were to expire at age 65.

DMS wrote to Laun on April 7, 2005, asking for more information but indicating that he would probably not be eligible for reclassification to accident disability since he was already receiving total disability benefits. On May 22, 2006, DMS obtained an independent physician to review Laun's medical records in order to evaluate his claim. That physician concluded that 35% of Laun's total impairment is due to his right wrist injury and 65% is due to the thumb condition and subsequent surgical procedures. DMS wrote letters to Laun in June and September 2006 explaining that he was not eligible for reclassification as disabled under the accident provision because, at the time of his accident, he was already receiving total disability benefits for a sickness from which he had not recovered.

Equitable and DMS moved for summary judgment on the grounds that under the plain language of the agreement, Laun's

disability could not be reclassified because his disability was caused and contributed to by the thumb illness and because he was not engaged in his occupation when he reportedly became disabled as a result of the wrist injury. The trial court granted the motion without written findings.

1. Laun argues his disability should have been reclassified from sickness total disability to injury total disability because the policy does not state that reclassification was prohibited, because his wrist bothered him more than his thumbs, and because he had hoped to return to surgical practice until he injured his wrist.

" 'An issue of contract construction is at the outset a question of law for the court.' [Cit.] The first step is to look to the four corners of the instrument to determine the intention of the parties from the language employed. [Cits.]" *Livoti v. Aycock*, 263 Ga. App. 897, 901-902 (2) (590 SE2d 159) (2003). If the language of the agreement is "clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the court." (Citations and punctuation omitted.) *Estate of Sam Farkas, Inc. v. Clark*, 238 Ga. App. 115, 119-120 (2) (517 SE2d 826) (1999). The policy defines the relevant terms as follows:

INJURY. Injury means accidental bodily injury of the Insured occurring while this policy is in force.

SICKNESS. Sickness means sickness or disease of the Insured which first manifests itself while this policy is in force.

TOTAL DISABILITY. Total disability means the complete inability of the Insured, because of injury or sickness, to engage in the Insured's regular occupation. . . .

. . .

ELIMINATION PERIOD. Elimination period means the number of days for which no benefits are payable at the beginning of a period of continuous total disability. The elimination periods for this policy are [30 days].

ACCIDENT TOTAL DISABILITY. Accident total disability means total disability resulting from injury.

SICKNESS TOTAL DISABILITY. Sickness total disability means total disability caused or contributed to by sickness or by any of the following: . . . medical or surgical treatment

of . . . any sickness or disease. Total disability caused or contributed to by [sickness or disease] will not be considered accident total disability.

These provisions are not ambiguous with regard to how to classify a disability that results from both a sickness/disease and an injury.[1] The final quoted provision plainly states that a disability "caused or contributed to by [sickness or disease] will not be considered accident total disability." Thus, only disability resulting solely from injury can be classified as accident total disability; whereas disability resulting in whole or in part from sickness is classified as sickness total disability.

Laun argues that the last sentence quoted above does not apply "because Dr. Laun's *wrist injury* was not caused or contributed to by his osteoarthritis." (Emphasis supplied.) But this argument confuses the policy language at issue. The test is whether his *total disability* was caused or contributed to by his osteoarthritis. "[T]his court may not strain the construction of the policy so as to discover an ambiguity . . . where none, in fact, exists." (Punctuation omitted.) *State Farm &c. Ins. Co. v. Staton*, 286 Ga. 23, 25 (685 SE2d 263) (2009). This argument therefore fails. And Laun's argument that the policy does not prohibit him from having his status reclassified is a red herring. His disability cannot be reclassified unless the facts comport with the policy language.

2. With regard to the facts, although Laun attempts to create an issue of fact about whether his disability results solely from the wrist injury, his own testimony shows that he is disabled partly as a result of his thumb illness and partly as a result of his wrist injury. First, Laun admits that at the time he fell and sprained his wrist, he was totally disabled, unable to engage in his occupation, and receiving total disability benefits for his thumb illness. He further admits that "the left thumb still contributes" to his disability; that independent of the wrist injury, his left thumb condition does not allow him to resume his occupation; that the percentage of impairment attributable to his wrist injury is 23% and that the percentage attributable to his thumbs is 7% per thumb; that at the time he requested reclassification of his disability, one or more of his thumbs had not improved sufficiently so as to allow him to perform as an orthopaedic and hand surgeon; that at that time, the thumb condition and the wrist injury disabled him in different ways; and that as of May 2005, his thumbs were not normal. He also characterizes his wrist injury

---

[1] The parties do not dispute that under the policy Laun's thumb condition is a sickness or disease and that his wrist problem is an injury.

only as "a worse problem" than his thumbs; as "more disabling than the thumbs"; as "my most disabling problem"; and as "greater than the thumb problems." Each of these characterizations implies that the thumbs are still a problem.

Despite all these comments and admissions, Laun argues strenuously that his current disability results solely from his wrist injury because he might not still be disabled if he had not suffered the wrist injury because he could have undergone additional thumb surgery and perhaps recovered sufficiently to practice his occupation in some capacity. He contends his right thumb is better than what it seems but that he cannot tell because of the injury to his wrist; "and if the wrist hadn't been injured, I would have had the left thumb [further surgically repaired] and hopefully be back at work." He added, "I haven't got the revision [to the left thumb] because it doesn't matter how good the thumb would get because I still couldn't work because of the wrist."

But even construing this evidence in favor of Laun, we conclude that under the plain meaning of the policy, Laun's disability was caused or contributed to by his thumb illness and, accordingly, that his disability cannot be classified as "accident total disability."

3. Our decision is not dependent on an interpretation of the policy's "elimination period," and, therefore, Laun's claim that the trial court misinterpreted that provision is moot. Also, Laun's claim that the trial court improperly relied on Pennsylvania law is without merit. The court's order does not state that it relied on Pennsylvania law, a trial court may consider law from other jurisdictions, and our opinion is not based on Pennsylvania law.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED SEPTEMBER 13, 2011.

*Thomerson, Spears & Robl, Michael J. Thomerson, Francesca Macchiaverna,* for appellant.
*Ford & Harrison, Michael A. Coval,* for appellees.