**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 14, 2016**

# In the Court of Appeals of Georgia

A16A0826. LEND A HAND CHARITY, INC. et al. v. THE FORD
    PLANTATION CLUB, INC.

BOGGS, Judge.

Lend A Hand Charity, Inc. appeals from the trial court's order finding it liable to the Ford Plantation Association, Inc. ("the Association") for assessments, charges, and interest. Lend A Hand and Kethesparan Srikanthan (collectively "appellants") appeal from the trial court's conclusion in the same order that they are liable to the Ford Plantation Club, Inc. ("the Club") for past due assessments, charges, and interest. Appellants contend that the trial court erred by (1) failing to permit them "to present evidence on questions of fact"; (2) failing to void the "Club's Declaration as a collateral or personal covenant which did not run with the land, and thus an

adhesive contract voidable by Appellants"; and (3) awarding interest to the Club at a rate of 18%. For the reasons explained below, we affirm in part and vacate in part.

1. In their first enumeration of error, appellants assert that the trial court erred by failing to permit them to present evidence on questions of fact, but they point to no place in the record where the trial court took any such action.[1] "This is a court for the correction of errors of law made by the trial courts, and an error of law has as its basis a specific ruling made by the trial court. In the absence of such a specific ruling, there is nothing for us to review." (Citations and punctuation omitted.) *Howell v. Beauly, Inc.*, Ga. App. (2) (Case No. A16A0327, decided July 12, 2016).

2. Appellants also assert that the trial court erred by "failing to void Appellee Club's Declaration as a collateral or personal covenant which did not run with the land, and thus an adhesive contract voidable by Appellants."

(a) To the extent appellants claim the trial court erred by failing to affirmatively void the Club Declaration, we cannot review it because the record before us does not include such a request. Id.

---

[1] We note that the record before us does not include a transcript of the motion hearing and that appellants requested that no transcripts be included in the record on appeal.

2

(b) To the extent appellants are asserting that the trial court erred by implicitly concluding that the club covenant ran with the land, we disagree.

The record shows that on January 4, 2011, Lend A Hand Charity, Inc. received Lot 275 in the Ford Plantation subdivision by gift deed. In 1998, the developer/owner of the Ford Plantation subdivision filed a "Declaration of Covenants, Conditions, and Restrictions" for the subdivision. The preamble of the Declaration states: "Declarant hereby declares that all of the property . . . shall be held, sold, used and conveyed subject to the following easements, restrictions, covenants, and conditions, which shall run with the title to the real property subjected to this Declaration." Article 3 of Declaration, titled "Membership and Voting Rights," provides:

> Every Owner shall be a Member of the [Ford Plantation] Association . . . . The membership rights of an Owner which is not a natural person may be exercised by any officer, director, manager, partner or trustee of such Owner, or by any individual designated from time to time by the Owner in a written instrument provided to the secretary of the Association.

The Declaration further provided that the Association was responsible for "management, maintenance, operation and control" of common areas of the subdivision and that the cost of maintenance and repair of the common areas would

3

be a common expense allocated among all units in the subdivision. In the "Assessments" section, the declaration authorized the Association to collect assessments. Additionally,

> Each Owner, by accepting a deed or entering into a contract of sale for any portion of the Properties, is deemed to covenant and agree to pay these assessments.

> . . .

> No Owner may exempt himself or herself from liability for assessments by non-use of Common Area . . . , abandonment of his or her Unit, or any other means. The obligation to pay assessments is a separate and independent covenant on the part of each Owner.

Following other articles governing matters such as architectural standards, use restrictions, easements, and mortgagee provisions, the Declaration contains an article governing the Club. This article states:

> Neither membership in the Association nor ownership or occupancy of a Unit shall confer any ownership interest in or right to use the Club. Rights to use the Club will be granted only to such persons, and on such terms and conditions, as may be determined from time to time by the Club, subject to the terms of the Club membership agreements.

Approximately two months after filing the general "Declaration of Covenants, Conditions, and Restrictions," the same owner/developer filed a Club Declaration for the subdivision. Its purpose, as stated in the preamble, follows:

> Declarant is the current owner and developer of that certain gated community . . . known as The Ford Plantation. . . . Declarant is also the owner of certain real property and improvements located within the Plantation which will be conveyed to The Ford Plantation Club, Inc. . . . and operated as a private, equity ownership, social and recreational club . . .

> In establishing the Plantation, Declarant intends to create an exclusive residential community with social and recreational facilities. It is the goal of the Declarant that the Club Facilities be utilized predominantly by homeowners in the Plantation and their families to maintain the concepts of exclusivity and community.

> In order to ensure that membership remains predominantly with the homeowners in the Plantation, the Declarant is requiring that all purchasers of residences and/or residential lots in the Plantation apply for membership in the Club, and if approved, become members of the Club . . . This Club Declaration shall run with title to and shall be binding on all Persons having any right, title, or interest in all or any portion of such real property . . . and shall inure to the benefit of each and every owner of all or any portion thereof.

According to the Club's bylaws, it operates "a private fishing, golf, equestrian, tennis, swimming and socially oriented club of uniformly high quality." The Club Declaration requires all owners to apply for membership and authorized the Club to levy assessments against lot owners. Additionally,

> No Owner of Member may waive or otherwise exempt himself or herself from liability for Assessments. By way of illustration and not limitation, there shall be no waiver or exemption of Assessments due to non-use of the Club Facilities, failure to submit a Membership Application, or abandonment of the Lot. The obligation to pay the Assessments is a separate and independent covenant on the part of each Owner."

Pursuant to a Fifth Amendment to the Club Declaration filed on April 23, 2003, no assessments could be levied against any owner whose membership application was not approved by the Club.

Based on the above, the trial court did not err by implicitly concluding that the Club Declaration ran with the land and was binding against subsequent lot owners.

> Covenants relating to land, or its mode of use or enjoyment, are enforceable against subsequent grantees with notice, whether named in the instrument or not, and though there is no privity of estate. It is immaterial in such cases whether the covenant runs with the land or not, the general rule being that it will be enforced according to the intention of the parties. It is only necessary that the covenant concern the land or

6

its use, and that the subsequent grantee has notice of it. Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights.

*Timberstone Homeowner's Assoc. v. Summerlin*, 266 Ga. 322, 323 (467 SE2d 330) (1996). The Georgia Supreme has previously recognized that a deed provision regarding a recreational club, similar to the declaration filed here, concerned the land or its use and created a covenant running with the land binding on a subsequent grantee upon acceptance of the deed. *Lowry v. Norris Lake Shores Dev. Corp.*, 231 Ga. 549 (203 SE2d 171) (1974). We see no reason to reach a contrary result here.

3. In their remaining enumeration of error, appellants contend that the trial court erred by awarding the Club interest at a rate of 18%. Based upon this court's recent decision in *Northside Bank v. Mountainbrook &c.*, Ga. App. (Case No. A16A0005, decided July 14, 2016), we agree. In *Northside Bank*, we concluded that the declaration of covenants, conditions, restrictions and easements for a subdivision governed the homeowner association's right to collect interest on past due assessments. Slip op. at 4 (1). In that case and the one presently before us, the declaration provided that interest could be collected at the maximum legal rate. As this is not a definite rate, we concluded in *Northside Bank* that the seven percent per

7

year rate mandated by OCGA § 7-4-2 (a) (1) (A) governed the rate of interest allowed by the declaration. Slip op. at 5-6 (1). In so holding, we expressly rejected the homeowner association's argument that it was entitled to 18 percent interest pursuant to OCGA § 7-4-16, a statute governing commercial accounts arising out of the sale of goods or services other than a retail installment transaction. Id. Accordingly, we vacate the portion of the judgment awarding interest at a rate greater than the seven percent provided for by OCGA § 7-4-2 and remand this case for recalculation of the interest at the correct rate. Id.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Barnes, P. J., and Rickman, J., concur.*