**THIRD DIVISION
ELLINGTON, P. J.,
ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**January 2, 2018**

# In the Court of Appeals of Georgia

A17A1810, A17A1811. GREAT WATER LANIER, LLC v. SUMMER CREST AT FOUR SEASONS ON LANIER HOMEOWNERS ASSOCIATION, INC., and vice versa.

ELLINGTON, Presiding Judge.

Great Water Lanier, LLC, filed this action in the Superior Court of Hall County against Summer Crest at Four Seasons on Lanier Homeowners Association, Inc., seeking, inter alia, a declaratory judgment that two undeveloped parcels of land Great Water owns are not burdened by the declaration of covenants applicable to the Summer Crest subdivision. Great Water filed a motion for partial summary judgment on this issue. After a hearing, the trial court denied Great Water's motion as to the larger parcel and, after notice, sua sponte granted summary judgment in favor of the Association as to that parcel, declaring that the parcel is subject to the declaration of

covenants.[1] In Case No. A17A1810, Great Water appeals. The trial court also granted the Association's cross-motion for partial summary judgment as to Great Water's claims for defamation of title and punitive damages, and Great Water appeals. In Case No. A17A1811, the Association cross-appeals from two earlier, nondispositive orders denying its motion for judgment on the pleadings and from a purported ruling allowing Great Water to withdraw an admission. For the reasons explained below, we affirm in Case No. A17A1810 and dismiss as moot in Case No. A17A1811.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant [or denial] of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

---

[1] The trial court granted Great Water's motion regarding the smaller parcel, declaring that the parcel is *not* subject to the declaration of covenants. The Association has not appealed this aspect of the court's ruling.

2

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). The relevant facts that follow are undisputed unless otherwise noted.

In 1988, Sharon/Lupton Partnership established the Summer Crest subdivision in Hall County. As the developer and declarant, the partnership recorded a Declaration of Covenants, Restrictions and Easements dated September 13, 1988, recorded in Hall County. A Tennessee corporation, Stonebridge Development Corporation, was one of the general partners, and became the successor in interest to the partnership. Stonebridge Development filed an amended declaration of covenants in 1994.[2] The declaration of covenants, as amended, placed certain restrictions, covenants and easements on the development and use of subdivision property and created the Association to own and maintain common areas and to enforce the covenants, restrictions and easements contained in the declaration.

The 1988 declaration of covenants described the property as comprising 59 single family lots and one amenity area lot. The declaration as amended in 1994, in Article X, allowed Stonebridge Development to make specified "Phase 2 Property"

---

[2] The declaration of covenants was also amended in 2002 and 2005; the changes are not pertinent to the issues in the case.

3

subject to the covenants, by filing an approved subdivision plat that expressly stated its intention to make the annexed real property subject to the provisions of the declaration, and allowed for the development of up to 27 additional homes. The Phase 2 Property included two tracts; Tract 1 comprised 17.338 acres and Tract 2 comprised 13,211 square feet. The amended declaration provided a process for resolving an issue that might arise in the event Stonebridge Development subjected the Phase 2 Property to the declaration of covenants, specifically that, with the addition of the new Phase 2 households, the existing recreational area might not have the needed capacity to serve all of the members. The amended declaration provided that, within ten years after the filing of the amended declaration on December 29, 1994, such annexation of additional property by Stonebridge Development did not require the consent of the Association. Otherwise, additional property could be annexed and made subject to the covenants by approval of 60 percent of the Association's members, that is, the subdivision's homeowners.

In 1999, Stonebridge Development merged into Springlake LLC, a Georgia corporation. A week later, Springlake LLC merged into Stonebridge, LLC, a Georgia corporation.

On May 23, 2003, within ten years after the filing of the 1994 amended declaration, Stonebridge recorded the Final Plat of Summercrest Phase II in the real estate records of Hall County, Plat Book 830, Pages 135A-142A.[3] Steve Kelly signed the plat on behalf of Stonebridge. At the bottom of the first page, the Phase II plat contains the notation, "Property subject to the Summer Crest Homeowner Association's Amended and Restated Declaration of Covenants, Restrictions and Easements and Design Standards[.]" On the second page, under "Notes," the plat contains the statement, "This phase is subject to the covenants recorded for Summercrest Subdivision." The plat's "area summary" breaks down the 17.338 acre total (which was specified in the 1994 declaration of covenants as Tract 1 of the Phase 2 property) into 1.692 acres of roads, 10.694 acres of lots, and 4.952 acres for

---

[3] The Phase 2 plat designated Stonebridge Development as the owner/developer. As Great Water contends, Stonebridge Development no longer existed as a legal entity, having been subsumed into Stonebridge, LLC; Great Water argues that the trial court erred in treating the designation in the plat as a misnomer. Great Water does not dispute, however, that Stonebridge, LLC, owned the Phase 2 property when the plat was recorded and that there would be no reason for the predecessor corporation to record a plat providing for development of the property. The entire record supports the trial court's determination that Stonebridge Development was a misnomer in the Phase 2 plat for the correct entity, Stonebridge, LLC. *AAA Restoration Co. v. Peek*, 333 Ga. App. 152, 153 (1) (775 SE2d 627) (2015) (A mere misnomer of a corporation in a deed transferring title to real property is not material and will not invalidate the deed or otherwise taint the chain of title, if the identity of the corporation intended is clear or can be ascertained by proof.).

"future development." The maps details fifteen residential lots and a parcel labeled "Future Development (This Area in [sic] Not to Be Common Area) 4.952 acres." The entire tract is bifurcated by a road, which ends in a cul de sac, and another cul de sac branches off at the road's midpoint, surrounded by five lots. The 4.952 acre parcel was not subdivided into residential lots, but it wraps around the cul de sac at the end of the road. [4]

The fifteen platted residential lots were developed in 2003. On June 30, 2004, Steve Kelly, for "Stonebridge Development," and the president of the Association executed an agreement, reciting that Stonebridge Development had exercised its right to annex the Phase 2 Property and filed the required plat and that it had sold and/or begun construction of the homes. Referring to Article X of the declaration of covenants, the agreement states, "[u]nder the Declaration, the Association and [Stonebridge] were to negotiate an amount that [Stonebridge] would pay the Association in order to improve the recreation area for the addition of the Phase 2

---

[4] Great Water avers that on August 26, 2003, a Warranty Deed from Stonebridge Development to Stonebridge of 17.777 Acres (Phase II) was signed by T.A. Lupton, President. Great Water, however, provided no record citation for this statement.

6

Property."[5] Stonebridge agreed to pay the Association $25,000 for recreation area improvements. The 2004 Phase 2 agreement provided: "It is understood and agreed that this agreement includes the 4.952 acres noted on [the] Final Plat for Future development" that was included in the 17.338 acre tract of the Phase 2 Property and that Stonebridge could develop the 4.952 acre parcel into lots "at any given time (subject, of course, to the Declaration) and these additional lots will be included in the Subdivision at no further cost to [Stonebridge]."

The fifteen homes built according to the Phase 2 plat were sold to homeowners between 2004 and 2009. Late in 2009, Great Water bought the still-undeveloped 4.952 acre parcel and the 13,212 square feet (0.303 acres) parcel (defined as Tract 2 of the Phase 2 property) from Stonebridge. Among the documents in the closing binder was an owner's affidavit, executed on September 8, 2009, by Joel Richardson, the manager of Stonebridge, who deposed that the 4.952 acre parcel and the 0.303 acre parcel were free of restrictions and encumbrances, "except as set forth in Exhibit 'C' attached hereto and made a part hereof[.]" As to the 4.952 acre parcel (but not as to the 0.303 acre parcel), Exhibit "C" listed as "permitted exceptions" the 1988

---

[5] Again, the record supports the trial court's determination that Stonebridge Development was a misnomer in the 2004 Phase 2 agreement for the correct entity, Stonebridge, LLC, for the reasons explained in note 3, supra.

declaration of covenants for Summer Crest subdivision, as amended in 1994. Richardson also executed limited warranty deeds conveying the two parcels to Great Water, "subject to those matters described in Exhibit 'B' attached hereto and made a part hereof." Exhibit "B," titled "Permitted Exceptions," listed matters such as taxes not yet due and a utility easement, giving the easements' recording information. Consistent with the owner's affidavit, Exhibit "B" for the 4.952 acre parcel (but not Exhibit "B" for the 0.303 acre parcel) listed the 1988 Summer Crest declaration of covenants, as amended in 1994 and thereafter, giving filing dates and deed book references. Exhibit "B" also listed "Plat of Survey recorded at Plat Book 830, Page 135A, aforesaid records.," i.e., the 2003 Phase 2 plat.

Also included in the closing binder for the 2009 purchase and sale was Richardson's sworn "Statement of Intent Regarding Amended and Restated Declaration of Covenants, Restrictions and Easements," executed on September 8, 2009, which stated:

> Stonebridge was the Declarant under the Amended Declaration on May 23, 2003, when Stonebridge caused to be filed in . . . the real estate records of Hall County, Georgia, that certain Final Plat for Summercrest Phase 2[] . . . By filing the Subdivision Plat, the Declarant did not intend to, and did not, subject all or any portion of the [Phase 2] Property to the Amended Declaration. No part of the [Phase 2] Property is subject to the

8

Amended Declaration, and the right of the Declarant to subject the Property to the Amended Declaration described in Article X of the Amended Declaration expired with no part of the [Phase 2] Property being made a part of the Amended Declaration.

Neither of the warranty deeds incorporated or otherwise referenced the Statement of Intent. The Statement of Intent, the deed to the 0.303 acre parcel, and the deed to the 4.952 acre parcel were all filed in the Hall County real property records on October 7, 2009.

In 2015, Great Water filed its action seeking a declaratory judgment that the 4.952 acre parcel and the 0.303 acre parcel are not burdened by the Summer Crest declaration of covenants and asserting claims for defamation of title, punitive damages, and attorney fees. The Association filed a counterclaim, seeking an alternative declaratory judgment that the parcels are burdened by the Summer Crest declaration of covenants and asserting claims for unpaid assessments and attorney fees. The trial court granted in part and denied in part the parties' motions for summary judgment, declaring that the 4.952 acre parcel is burdened by the declaration of covenants and that the 0.303 acre parcel is not burdened by the declaration of covenants. The trial court also granted the Association's cross-motion

9

for partial summary judgment as to Great Water's claims for defamation of title and punitive damages.

*Case No. A17A1810*

1. In several related arguments, Great Water contends that questions of material fact remain regarding whether the 4.952 acre parcel is burdened by the Summer Crest declaration of covenants.

Under well-settled Georgia law, "[w]hen a grantee accepts a deed and enters thereunder, he will be bound by the covenants contained therein, although the deed has not been signed by him." OCGA § 44-5-39. See *Reeves v. Comfort*, 172 Ga. 331, 333 (157 SE 629) (1931) (citing predecessor statute); *Lend A Hand Charity, Inc. v. Ford Plantation Club*, Inc., 338 Ga. App. 594, 598 (2) (b) (791 SE2d 180) (2016) (Covenants requiring that property owners in a gated community pay assessments and become club members were binding on subsequent grantee upon acceptance of a deed of gift.); *Bowman v. Walnut Mountain Prop. Owners Assn., Inc.,* 251 Ga. App. 91, 95-96 (1) (d) (553 SE2d 389) (2001) (physical precedent only) ("[R]estriction of use of the land conveyed may burden the land through the deed of title. By accepting a deed with covenants and restrictions, the grantee voluntarily consents to be bound by such covenants.") (citations omitted); Daniel F. Hinkel, Pindar's Georgia Real Estate

Law and Procedure (7th ed., updated April 2017) §§ 19-187 ("Although a grantee does not ordinarily sign a deed, he may become bound by the act of acceptance as effectually as if he had signed. Covenants, conditions, charges, and restrictions may thus not only become obligations of the immediate grantee, but may run with the land and be binding upon his successors in title to the extent of their interest in the property.") (footnotes omitted); 26-157 ("There is danger in reciting that the deed is 'subject' to certain things; if the title was not encumbered with them, you have made it so." ) (footnote omitted). And it is axiomatic that a grantor in a deed can convey only that which it owns and that a grantee can take no greater title than that held by the grantor. *Interchange Drive, LLC v. Nusloch,* 311 Ga. App. 552, 556-557 (716 SE2d 603) (2011). Thus, when a declarant burdens its property with a set of covenants, conditions, and restrictions that run with the land, one who later accepts a deed from the declarant or its assignee is bound by the covenants. Id. "[T]he written instrument is considered the true, complete understanding between the parties." (Punctuation and footnotes omitted.) Id. at 556. Thus, we begin with the warranty deed that conveyed the property from Stonebridge to Great Water.

As recited above, the deed by which Great Water accepted title to the 4.952 acre parcel expressly states that the conveyance and the warranty of title contained

11

in it were made subject to those matters described in the attached Exhibit B, which expressly listed the Summer Crest declaration of covenants. Great Water argues that

> "Permitted Exceptions" . . . is not language which would be used if the intention were to 'subject' the described property to some type of encumbrance. The use of the word "Exceptions" clearly indicates the limitation of the warranty, not the establishment of Declaration of Covenants or an intention to be bound by the Covenants. In interpreting the language of the deed, it is important to understand that the word "subject" is, itself, capable of multiple meanings. "Subject" can be either noun (a person or thing being discussed, etc.), or an adverb (limited to or conditional), or a verb (cause someone or something to undergo an experience, etc.). Likewise, the word "matter" may mean "a subject under consideration" or "a subject of disagreement." Because the words of the deed are inherently ambiguous, consideration of *circumstances* is critical.

The construction of a deed presents a question of law which the appellate court reviews de novo. *Second Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*, 282 Ga. 721, 724 (2) (653 SE2d 462) (2007).

> In construing a deed, the court's overriding goal is to ascertain and give effect to the intent of the parties. Generally speaking, the intent of the parties must be determined from the deed's text alone, and extrinsic evidence will be admitted to interpret the deed only where the deed's

12

text is so ambiguous that its meaning cannot be determined through application of the ordinary rules of textual construction. Absent such ambiguity, there is no question of fact to be resolved by the factfinder.

(Footnotes omitted.) Id. at 724-725 (2). See OCGA § 13-2-2 (2) (When construing a contract, "[w]ords generally bear their usual and common signification."); *Laun v. AXA Equitable Life Ins. Co.*, 311 Ga. App. 646, 648 (1) (716 SE2d 760) (2011) (If the language of an agreement is "clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the court."). "[W]here the terms of a written contract are plain and unambiguous, a court must confine itself to the four corners of the document to ascertain the parties' intent, and is not permitted to strain the construction of a contract, so as to discover an ambiguity." (Punctuation and footnotes omitted.) *Triple Eagle Associates, Inc. v. PBK, Inc.*, 307 Ga. App. 17, 23 (2) (b) (704 SE2d 189) (2010). See also *Ayers v. Assn. of County Commrs. of Georgia-Interlocal Risk Management Agency*, 332 Ga. App. 230, 235 (1) (771 SE2d 743) (2015) ("[A] court may not strain to find an ambiguity [in a contract] and must enforce an unambiguous contract as written.") (citation and punctuation omitted); *Thornton v. Ga. Farm Bureau Mut. Ins. Co.*, 287 Ga. 379, 384 (2) (b) (695 SE2d 642) (2010) (accord).

Great Water is asking the Court to strain to discover an ambiguity in the deed. The very purpose of a warranty deed is that it commits the grantor to defending against any defects in title, even defects that are known to the purchaser at time of the deed. Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure §§ 19-7; 19-178; 19-183 (7th ed., updated April 2017). Because few titles are absolutely perfect, a warranty deed typically includes a "subject to" clause and specifies encumbrances that will not be cured or defended by the grantor. Daniel F. Hinkel, Ga. Real Estate Sales Contracts § 8:11 (6th ed.). Certainly lexicographers can debate the various alternative meanings of "exceptions," "subject," and "matter," but the usual and common meaning of these terms as used in warranty deeds controls our analysis. Here, Stonebridge conveyed the 4.952 acre parcel to Great Water in fee simple subject to the those matters described in the attached Exhibit "B," which expressly described the Summer Crest declaration of covenants and the Phase 2 plat. We discern no ambiguity in the deed. Consequently, we must confine ourselves to the four corners of the document to ascertain the parties' intent and may not, as Great Water argues, consider the contradictory impact of the Statement of Intent or other

extrinsic matters. *Second Refuge Church of Our Lord Jesus Christ, Inc. v. Lollar*, 282 Ga. at 725 (2).[6]

OCGA § 44-2-20 does not require a different result. That statute sets out the requirements for recording an affidavit regarding, among other issues, facts affecting title to land or encumbrances upon land, which the clerk of court will index in the deed records.[7] An affidavit recorded under OCGA § 44-2-20 is not a conveyance but is simply notice to the world of the contents of the affidavit. *Maxco, Inc. v. Volpe*, 247 Ga. 212, 214 (1) (274 SE2d 561) (1981) (applying predecessor statute); Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure § 23:109 (7th ed., updated

---

[6] Granted, the Statement of Intent and other parol evidence might support an inference that Great Water *wanted* to buy, and that Stonebridge *wanted* to be able to sell, the 4.952 acre parcel free from the restrictions imposed by the Summer Crest declaration of covenants. Great Water could have refused to accept the deed that provided instead that the parcel was subject to, not free from, the declaration. Instead, it accepted the deed, and because the deed was unambiguous, the Statement of Intent was ineffectual to modify it, despite being contemporaneously recorded and despite whether Great Water relied upon it. Whether the evidence might support a claim for equitable reformation of the deed, or whether Stonebridge might somehow be liable for thwarting Great Water's plans, are issues that were not before the trial court and are not now before this Court.

[7] "Recorded affidavits shall be notice of the facts therein recited, whether taken at the time of a conveyance of land or not, . . . [w]here such affidavits state any . . . fact or circumstance affecting title to land or any right, title, interest in, or lien or encumbrance upon land." OCGA § 44-2-20 (a) (9).

15

April 2017). The statute does not provide a mechanism for a grantor to cure an encumbrance on land the grantor has conveyed subject to an existing encumbrance. *Kemp v. Neal*, 288 Ga. 324, 327 (2) (704 SE2d 175) (2010).

Furthermore, the Georgia Property Owners' Association Act, OCGA § 44-3-220 et seq., does not require a different result. That Act provides that a property owners' association instrument includes the declaration, plats, and plans recorded pursuant to the Act and that "[a]ny exhibit, schedule, or certification accompanying an instrument and recorded simultaneously therewith shall be deemed an integral part of that instrument." OCGA § 44-3-221 (17). Nothing in this statute provides a mechanism for a grantor to modify the terms of an unambiguous deed by simultaneously recording a contradictory statement of intent.

In summary, Great Water accepted a deed that unambiguously conveyed the 4.952 acre parcel subject to the declaration of covenants, and, by doing so, Great Water voluntarily consented to be bound by such covenants. *Lend A Hand Charity, Inc. v. Ford Plantation Club*, Inc., 338 Ga. App. at 598 (2) (b); *Interchange Drive, LLC v. Nusloch,* 311 Ga. App. at 557. The trial court's declaratory judgment to that

16

effect, and its grant of the Association's motion for partial summary judgment and its denial of Great Water's motion for partial summary judgment, were not error.[8]

2. Great Water contends that the trial court erred in granting the Association's cross-motion for partial summary judgment as to Great Water's claims for defamation of title and punitive damages.

"The owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." OCGA § 51-9-11. "In order to sustain an action of this kind, the plaintiff must allege and prove the uttering and publishing of the slanderous words; that they were false; that they were malicious; that he sustained special damage thereby; and that he possessed an estate in the property slandered." (Citation and punctuation omitted) *Veatch v. Aurora Loan Svcs., LLC*, 331 Ga. App. 597, 600 (1) (771 SE2d 241) (2015). Great Water alleged that the Association falsely and maliciously impugned its title when it recorded an amended declaration in 2012 that asserted that the 4.952 acre parcel is subject to the Summer Crest declaration of covenants. Because the 4.952 acre parcel *is* subject to the Summer Crest declaration

---

[8] Because our review of the evidence is de novo, and we do not defer to the trial court's legal analysis, we do not need to address Great Water's remaining challenges to the trial court's analysis, which do not pertain to our holding.

17

of covenants, as explained in Division 1, supra, Great Water cannot sustain an action for slander to title, which must be based on the uttering of false words. *Executive Excellence, LLC v. Martin Bros. Investments, LLC*, 309 Ga. App. 279, 285 (1) (710 SE2d 169) (2011); *Roofing Supply of Atlanta, Inc. v. Forrest Homes, Inc.*, 279 Ga. App. 504, 508 (3) (632 SE2d 161) (2006); *Simmons v. Futral*, 262 Ga. App. 838, 842 (586 SE2d 732) (2003); *Premier Cabinets, Inc. v. Bulat*, 261 Ga. App. 578, 583-584 (6) (583 SE2d 235) (2003).[9]

---

[9] Great Water contends that, if the 4.952 acre parcel is subject to the Summer Crest declaration of covenants, then the parcel is effectively limited "to a beautiful, wooded parcel, incapable of development, proximate to Lake Lanier which, no doubt, would be 'enjoyed' by the homeowners of Summercrest." From the beginning, the declaration of covenants has provided that "[l]ots may be used for single-family residences only[,]" and "no lot may be split, divided, or subdivided for sale, resale, gift, transfer, or otherwise." Furthermore, the declaration has always defined "lot" broadly, as "any parcel of land shown upon a subdivision plat recorded in the Office of the Clerk of the Superior Court of Hall County, Georgia, covering any portion of the property, provided, however, that no portion of the Common Property shall ever be a lot." In the context of the Association's motion for judgment on the pleadings, it argued that the declaration defines the term "lot" as "any 'parcel' of land shown on a plat without any distinction between subdivided lots or un-subdivided parcels." Still, Great Water has not identified any pleading or evidence in the record showing that the Association has ever taken the untenable position that the declaration of covenants prohibits Great Water from subdividing the 4.952 acre parcel into lots of a size consistent with the declaration and building single-family homes on the lots or selling the property to another developer.

18

Because the Association was entitled to summary judgment on Great Water's claim for defamation of title, the punitive damages claim against arising from the same allegedly wrongful conduct must also fail, as it was a derivative claim. "A derivative claim cannot survive the absence of compensatory damages on the underlying claim." *Corrugated Replacements, Inc. v. Johnson*, 340 Ga. App. 364, 371 (4) (797 SE2d 238) (2017). See *Chaney v. Harrison & Lynam, LLC*, 308 Ga. App. 808, 819 (3) (708 SE2d 672) (2011) (Because the plaintiffs could not establish their underlying tort claims, including defamation, their claim for punitive damages was likewise subject to summary adjudication.).

*Case No. A17A1811*

3. The Association cross-appeals the denial of its motion for judgment on the pleadings. In considering the Association's motion for judgment on the pleadings, the trial court determined that the pleadings did not conclusively establish that the 4.952 acre parcel was subject to the Summer Crest declaration of covenants, and denied the motion. The Association contends, inter alia, that the trial court erred because the 2003 Phase 2 Plat alone subjected the 4.952 acre parcel to the Summer Crest declaration of covenants. As explained in Division 1, supra, the trial court ultimately concluded that the 4.952 acre parcel as a matter of law was subject to the Summer

19

Crest declaration of covenants, and we agree. Any error in the trial court's interlocutory ruling on the Association's motion for judgment on the pleadings is therefore moot. See *Green v. Sams*, 209 Ga. App. 491, 499 (2) (433 SE2d 678) (1993), called into question on other grounds, *Sewell v. Cancel*, 295 Ga. 235, 239, n. 2 (759 SE2d 485) (2014).

The Association also appeals from a purported ruling in the summary judgment order that allowed Great Water to withdraw an admission, specifically, that the Phase 2 plat was prepared by (or on behalf of) Stonebridge, LLC. This argument is likewise moot for the reasons explained in Division 1.

Because the arguments raised in the Association's cross-appeal are moot, Case No. A17A1811 is dismissed.

*Judgment affirmed in Case No. A17A1810. Appeal dismissed as moot in Case No. A17A1811. Andrews and Rickman, JJ., concur.*