**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 14, 2016**

# In the Court of Appeals of Georgia

A16A0005. A16A0220. NORTHSIDE BANK v. MOUNTAINBROOK OF BARTOW COUNTY HOMEOWNERS ASSOCIATION, INC. and vice versa.

BARNES, Presiding Judge.

These companion appeals arise from the trial court's grant of summary judgment to Mountainbrook of Bartow County Homeowners Association, Inc., formerly known as Mountainbrook Property Owners Association (hereinafter "Mountainbrook"). Northside Bank foreclosed on six lots in the Mountainbrook subdivision and when, after several years, Northside did not pay homeowners association assessments on the lots, Mountainbrook filed an action against Northside to foreclose on the property liens and collect the unpaid assessments, interest, late fees and attorney fees. The trial court granted summary judgment to Mountainbrook and awarded $190,904.68 for the unpaid assessments, interest, and late fees, and $65,834.02 in attorney fees.

In Case No. A16A0005, Northside contends that the trial court erred by granting Mountainbrook 18 percent interest on the assessments, by granting Mountainbrook actual attorney fees, rather than "reasonable" attorney fees under OCGA § 13-1-11, and by granting Mountainbrook late fees. In Case No. A16A0220, Mountainbrook contends that the trial court erred by abating post-judgment interest in its order granting Mountainbrook's motion for supercedeas bond.

Summary judgment is proper only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). On appeal from a trial court's grant or denial of summary judgment, we "conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party." *Bank of North Ga. v. Windermere Dev.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012). Viewed under this standard, the record reveals that in September of 2007, Northside took title by foreclosure to six lots in the Mountainbrook subdivision. Northside failed to timely pay the homeowners association assessments owed pursuant to Mountainbrook's Declaration of Covenants, Conditions, Restrictions and Easements (the "Declaration") and on May 26, 2009, Mountainbrook filed a complaint for an award of damages and judicial foreclosure of its liens against Northside to collect the

2

past due assessments. Northside answered, asserting multiple counterclaims, including slander of title and breach of covenants, and also filed a third-party complaint against the president of Mountainbrook's Board of Directors. Northside further requested the appointment of a receiver to determine if the assessments were being used for the proper purpose.

Mountainbrook filed a motion for summary judgment, which the trial court denied. In the same order, the trial court granted Northside's request for the appointment of a receiver to "conduct a full and comprehensive audit of [Mountainbrook's] fund" to determine if the assessments were proper in "form and substance." Subsequent to the filing of the receiver's report, Mountainbrook filed a renewed motion for summary judgment and damages in the amount of $190,904.68 for "past due annual and special assessments, late fees and interest," $1,443.11 for costs, and $65,834.02 for attorney fees. Following a hearing, at which the trial court noted that it had adopted all of the receiver's findings, the trial court granted Mountainbrook's motion for summary judgment.

Case No. A16A0005

1. Northside contends that because the Declaration does not specify an interest rate, the trial court erred in granting Mountainbrook 18 percent interest on the

3

assessments, rather than the 7 percent interest allowed by law pursuant to OCGA § 7-4-2. We agree.

Mountainbrook's entitlement to interest on the past due assessments is governed by the contract between the parties, in this case the Declaration. "[T]he parties may establish any rate of interest, expressed in simple interest terms as of the date of the evidence of the indebtedness, . . . where the principal amount involved is more than $ 3,000.00." OCGA § 7-4-2 (a) (1) (A). "The requirement that the rate of interest be expressed in simple interest terms does not mandate numerical terminology but is met by the expression of the method of computation of interest by reference to 'prime' or other indices such as 'base.'"(Citation and punctuation omitted.) *1600 Capital Co. v. Bankers First Fed. &c. Assn.*, 187 Ga. App. 504, 506 (370 SE2d 668) (1988). However, unless the relevant agreement specifies otherwise, interest is to be awarded at a rate of 7 percent per year. *Quintanilla v. Rathur*, 227 Ga. App. 788, (490 SE2d 471) (1997); OCGA § 7-4-2 (a) (1) (A).

Here, Article VI, Section 8 of Mountainbrook's Declaration provided that for assessments not paid "within five (5) days after the due date, the assessment shall bear . . . interest from the date of delinquency at the *maximum legal rate per annum*." (Emphasis supplied.) in its order granting Mountainbrook's motion for summary

4

judgment, the trial court found "the proper rate of interest for the unpaid assessments to be 18 percent per annum as the maximum allowable by law provided for in Article VI, Section 8 of the Declaration and based upon the holding in *Noons v. Holiday Hospitality Franchising*, 307 Ga. App. 351 [(705 SE2d 166) (2010)]."

The trial court's reliance on *Noons* is misplaced. In *Noons*, the contract provided for the lesser of an interest rate of 1.5 percent per month, which is 18 percent a year, or the maximum interest rate allowed by law. 307 Ga. App. at 355 (3). We held that Holiday Inn was entitled to the interest rate designated by the specific terms of the contract of 1.5 percent per month or 18 percent per annum. Id. Although not argued in *Noons*, OCGA § 7-4-2 did not apply in that case because the parties expressed the rate of interest in the contract (1.5 percent per month or 18 percent per annum), unlike in the Declaration at issue in this case.

Here, contrary to Mountainbrook's contention, an interest rate of "the maximum legal rate per annum" is not a rate that is definite and ascertainable. Unlike a reference to the "prime rate" which, while not of specific numerical value, is easily computable, the "maximum legal rate per annum" provides no set and certain base for computation. See *Stewart v. Nat. Bank of Ga.*, 174 Ga. App. 892, 893 (1) (332 SE2d

5

19) (1985). In this case, the term "maximum legal rate" as used in the Declaration is vague and, as such, renders the interest rate indefinite.

Although Mountainbrook maintains that the maximum legal amount under Georgia law is 18 percent pursuant to OCGA § 7-4-16, that statute establishes the maximum interest rate on commercial accounts. The Declaration is not a commercial account. Per OCGA § 7-4-16, a "'[c]ommercial account' means an obligation for the payment of money arising out of a transaction to sell or furnish, or the sale of, or furnishing of, goods or services other than a 'retail installment transaction.'"

OCGA § 7-4-2 governs the rate of interest in contracts where the interest rate is not specified. Because, "the maximum legal rate" specified in the Declaration was not definite and ascertainable, the trial court erred in awarding 18 percent interest rather than the 7 percent provided for by OCGA § 7-4-2. Accordingly, that portion of the judgment must be vacated, and the case remanded for recalculation of the interest rate pursuant to OCGA § 7-4-2.

2. Northside also contends that the trial court erred in calculating the attorney fees owed under the Declaration because the amount of fees was governed and limited by OCGA § 13-1-11. We do not agree.

"The general rule is that expenses of litigation, including attorney[] fees, are not recoverable by a litigant against the opposite party except in those cases which are specifically provided for by contract or by statute. [Cit.]" *Hickman v. Frazier*, 128 Ga. App. 552 (1) (197 SE2d 441) (1973). Here, Article 6, Section 5 of the Declaration provides, in relevant part, that [e]ach such assessment, together with the interest thereon and cost of collection thereof, including *reasonable attorney's fees*, shall be the personal obligation of the . . . Owner." Article 6, Section 8, provides that in an action to collect delinquent assessments, "interest, cost and *reasonable attorney[] fees* of any such action shall be added to the amount of such assessment." Northside contends that because the Declaration only provided for reasonable attorney fees without specifying the amount, the award should be calculated pursuant to OCGA § 13-1-11, and the trial court erred in awarding reasonable attorney fees pursuant to the Declaration.

OCGA § 13-1-11 provides in relevant part that,

[i]f such note or other evidence of indebtedness provides for the payment of reasonable attorney[] fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00[.]

7

OCGA § 13-1-11 (a) (2).

The trial court found that "based upon the language . . . of the Declaration, that the award of reasonable attorney[] fees . . . [was] proper" and awarded Mountainbrook $65,834.02 for "reasonable attorney[] fees." Mountainbrook asserts that OCGA § 13-1-11 does not apply to the Declaration because it "is not a 'note or other evidence of indebtedness' that creates a promise to repay a fixed debt upon its creation." Mountainbrook also contends that its argument is bolstered by the statutory authority of the Property Owners' Association Act ("the Act"), OCGA § 44-3-220 et seq,[1] which, it asserts, establishes that homeowners association assessments are not debts under OCGA § 13-1-11.[2]

We agree that OCGA § 13-1-11 does not apply in this case because the Declaration is not an evidence of indebtedness as contemplated by the statute.

---

[1] OCGA § 44-3-232 (b) (3) provides that, "[t]o the extent that the instrument provides, the personal obligation of the lot owner and the lien for assessments shall also include . . . [t]he costs of collection, including court costs, the expenses required for the protection and preservation of the lot, and *reasonable attorney[] fees actually incurred*." (emphasis supplied.)

[2] Mountainbrook acknowledges that a homeowners association must affirmatively opt into the Act for it to apply, and that because it did not do so, the Act's attorney fees provision does not apply in this case. See OCGA § 44-3-220 et seq.

"'[E]vidence of indebtedness,' as used in OCGA § 13-1-11, has reference to any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money." (Citation and punctuation omitted.) *Radioshack Corp. v. Cascade Crossing II, LLC*, 282 Ga. 841, 846 (653 SE2d 680) (2007).

The Declaration provides that "[e]ach Owner of a Lot, by acceptance of a deed . . . is deemed in covenant and agree to pay to the Association: (1) annual assessments, *which may or shall be levied* by the Association, and (2) special assessments to be established and collected as hereinafter provided." Thus, while the Declaration provides for attorney fees incurred in collecting assessments, it also provides that annual assessments *may* be levied annually or, in some instances, the assessments *may not* be assessed. Thereby, rather than an evidence of indebtedness reflected by a written instrument for the payment of money that imports on its face the existence of a debt, the Declaration only evinces an obligation that *may* arise to pay assessments should they be levied. See generally *O'Brien's Irish Pub v. Gerlew Holdings*, 175 Ga. App. 162, 166 (4) (332 SE2d 920) (1985) (statute inapplicable to exclusive real estate listing agreement); *Holcomb v. Evans*, 176 Ga. App. 654, 657 (3) (337 SE2d 435) (1985) (personal services contract was not "note or other

9

evidence of indebtedness" within meaning of statute); *Vaughters v. Outlaw*, 293 Ga. App. 620, 623 (2) (668 SE2d 13) (2008) (OCGA § 13-1-11 did not apply to contract for legal representation).[3]

Because OCGA § 13-1-11 does not apply here to limit the attorney fees award, the trial court did not err in awarding "reasonable attorney fees pursuant to the Declaration." See, e.g., *Layfield v. Southeastern Constr. Coordinators*, 229 Ga. App. 71, 72 (1) (492 SE2d 921) (1997) (award of fees not governed by statutory provision but by provision in the contract providing for assessment of "all legal fees incurred. . . in the collecting of any monies due for the contract sum.")[4] Moreover, we cannot assume, as Northside argues, that because the trial court awarded the amount

---

[3] We also find that OCGA § 13-1-11 does not apply here because the Declaration is not a written instrument *signed or executed by the obligor* Northside Bank. See *Radioshack Corp*, 282 Ga. at 846. In fact, the Declaration is neither signed nor executed by any obligor and contains only the signature of the president of Mountainbrook Development. For this additional reason, while notes, guarantees, and leases, as instruments signed by the obligor, are "evidence of indebtedness," the Declaration here is not "evidence of indebtedness" as contemplated by statute.

[4] In its pleading, Mountainbrook alternatively requested reasonable attorney fees pursuant to the Declaration and also under OCGA § 13-6-11 for Northside's "bad faith and stubbornly litigious behavior." However, "both the liability for and amount of attorney fees pursuant to OCGA § 13-6-11 are solely for the jury's determination, and a trial court is not authorized to grant summary judgment in favor of a claimant therefor." *Covington Square Assocs. v. Ingles Markets*, 287 Ga. 445, 446-448 (696 SE2d 649) (2010).

requested that the award was for *actual* attorney fees instead of *reasonable* attorney fees.

Accordingly, we affirm the trial court's award of attorney fees.

3. Northside also contends that the award of 10 percent of the past-due assessments as late fees constituted an unenforceable penalty under Georgia law. Article VI, Section 8 of the Declaration provided, in relevant part, that "if the assessment is not paid within five (5) days after the due date, the assessment shall bear a late charge in an amount set by the Board." "Determining whether such a clause constitutes an enforceable liquidated damages provision or an unenforceable penalty is a question of law for the court." (Citation and punctuation omitted.) *Jamsky v. HPSC, Inc*., 238 Ga. App. 447, 449 (519 SE2d 246) (1999). See OCGA § 13-6-7.[5]

Generally, "for the late fee to be considered an enforceable liquidated damage provision, rather than a penalty, it must comply with three requirements." *Telescripps Cable Company v. Welsh*, 247 Ga. App. 282, 284 (1) (542 SE2d 640) (2000). "First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and

---

[5] "If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby." OCGA § 13-6-7

11

third, the sum stipulated must be a reasonable pre-estimate of the probable loss." (Citations and punctuation omitted.) *Southeastern Land Fund, Inc. v. Real Estate World, Inc.*, 237 Ga. 227, 230 (227 SE2d 340) (1976). "[I]mplicit in the concept of liquidated damages in addition to the above factors is that both parties are bound by their agreement." Id at 231. On summary judgment, the movant has the burden of showing that as to the three prongs, no genuine issue of material fact exists. *Peterson v. P. C. Towers, L.P.*, 206 Ga. App. 591, 592-593 (3) (426 SE2d 243) (1992).

Mountainbrook has not met its burden as to the third prong by demonstrating that the late fee provision is a reasonable pre-estimate of the probable loss. Here, per the Declaration, "[i]f the assessment is not paid within five (5) days after the due date, the assessment shall bear a late charge in an amount set by the Board." As this language reflects, the late fee provision provides no pre-estimate, reasonable or otherwise, of the probable loss associated with the late payment of assessments. The late fee is set at the total discretion of the Board. There is no indication as to what criteria the Board must use to determine the late fees, when the late fees are to be set, or whether there is any ceiling on the amount of late fees that can be charged.[6]

---

[6] Mountainbrook argues that a 10 percent late fee per annum represents a statutorily reasonable estimate of the probable loss associated with the late assessments based on OCGA § 44-3-232 (b) (1) (b), which provides for "[a] late or

12

Accordingly, Mountainbrook failed to show that the late fees provision in the Declaration were liquidated damages rather than an impermissible penalty, and thus the trial court erred in granting summary judgment to Mountainbrook as to these damages. Compare *Oami v. Delk Interchange, Ltd.*, 193 Ga. App. 640, 642 (388 SE2d 706) (1989) (a $10 surcharge for each day of tenant's failure to pay rent was "adjusted to the length of tardiness" and was a reasonable pre-estimate of the probable loss).

Case No. A16A0220

4. In several enumerations of error Mountainbrook contends that the trial court impermissibly abated post-judgment interest in its order granting Mountainbrook's motion for supersedeas bond. We agree.

The record reflects that on July 10, 2015, the trial court granted Mountainbrook's motion for summary judgment and entered judgment for Mountainbrook in the amount of $258,181.81, which included an award of 18 percent interest on unpaid assessments, attorney fees, and late fees. On July 23, 2015,

---

delinquency charge not in excess of the greater of $10.00 or 10 percent of the amount of each assessment . . . not paid when due." However, as previously noted, Mountainbrook did not opt into the Property Owner's Association Act and thus that provision does not apply under the facts of this case.

13

Northside timely filed a notice of appeal from the judgment, and on July 29, Mountainbrook filed a motion for supersedeas bond, in which it requested a hearing on its motion, and, in anticipation of accruing costs associated with "a time-consuming appeal," sought a bond of $344,655.53.[7] In its response to the motion, Northside filed a response and requested that the trial court instead authorize payment of $263,402.03 into the court registry, reflecting the amount of the judgment and daily interest from the date the judgment was entered until the date the money was placed into the trial registry, and that such payment into the court registry would "abate any post-judgment interest accrual" while it appealed the judgment.

Following a hearing, the trial court granted Mountainbrook's motion for supersedeas bond and ordered that Northside deposit $279,262.03 into the court's registry within 15 days, after which time, if no deposit was made, interest would accrue. The order stipulated that the "Deposit satisfies the requirements of OCGA § 5-6-46 (a) by providing a sufficient form of security to satisfy the judgment in full," and also that the "Deposit satisfies the requirements of OCGA § 9-11-67" and "[u]pon receipt of the Deposit by the Clerk, post-judgment interest on the Judgment

---

[7] At the hearing on the motion, Mountainbrook argued that the bond should include costs associated with appeal including "one year's worth of interest at $46,473.72," and "an additional $30,000.00 for an appeal of this type."

shall abate." The order further held that the deposit was "subject to withdrawal. . . in whole or in part, at any time upon request by [Mountainbrook]." Northside deposited the funds into the court registry on August 20, 2015, and it is from the supersedeas order that Mountainbrook appeals.

a. Mountainbrook contends that the trial court's abatement of the post-judgment interest in the order granting supersedeas bond was an impermissible modification of its previous order granting Northside summary judgment. It asserts that the filing of the notice of appeal deprived the trial court of jurisdiction to modify or alter the judgment. We agree.

"Regarding the order requiring a supersedeas bond, OCGA § 5-6-46 (a) authorizes a trial court to rule on such motions even though filed after the notice of appeal is filed and after the appeal is docketed in the appellate court." *Ruffin v. Banks*, 249 Ga. App. 297, 299 (3) (548 SE2d 61) (2001), overruled on other grounds, *Kent v. Kent*, 289 Ga. 821 (716 SE2d 212) (2011). Under OCGA § 5-6-46 (a), the trial court has the discretion to require the posting of a supersedeas bond to cover the costs of appeal, the delay, and the judgment, if affirmed. However, "[a] notice of appeal divests the trial court of jurisdiction to supplement, amend, alter, or modify the judgment while the appeal of that judgment remains pending." (Citations omitted.)

15

*McLeod v. Clements*, 306 Ga. App. 355, 357 (2) (702 SE2d 638) (2012). See also OCGA § 5-6-46(a).

OCGA § 9-11-67 permits a judgment debtor to abate the accrual of interest under certain conditions, including obtaining the permission of the court to deposit all or part of the relief sought into the court registry.[8] However, once Mountainbrook filed its notice of appeal, the trial court was divested of jurisdiction to rule on whether post-judgment interest was abated pursuant to OCGA § 9-11-67, which would, in effect, modify or alter the judgment. See *Kidd v. Unger*, 207 Ga. App. 109 (3) (427 SE2d 82) (1993) (after notice of appeal was filed, trial court lacked jurisdiction to enter an order purporting to limit scope of earlier ruling from which notice of appeal was filed).

> [S]upersedeas suspends all further proceedings in the suit in which the judgment superseded is rendered, such as are based upon and relate to the carrying into effect of that judgment. Under this rule the

---

[8] "In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing to be held by the clerk of the court, subject to withdrawal, in whole or in part, at any time thereafter upon order of the court, upon posting of sufficient security. *Where the thing deposited is money, interest thereupon shall abate.*" OCGA § 9-11-67.

16

supersedeas, during its pendency, prevents any steps to enforce or carry into effect the judgment, such as issuing an execution based thereon.

(Citations and punctuation omitted.) *Intl. Images v. Smith*, 181 Ga. App. 543, 544 (352 SE2d 846) (1987). Thus, abatement of the post-judgment interest was prohibited by the supersedeas, and the trial court erred in so ordering. Compare *JTH Tax, Inc. v. Flowers*, 311 Ga. App. 495, 497 (716 SE2d 559) (2011) (after remittitur, trial court properly ruled on post-judgment interest abatement, finding interest was not abated per OCGA § 9-11-67 because funds could not be withdrawn during appeal); *Great Southern Midway v. Hughes*, 223 Ga. App. 643, 644 (478 SE2d 400) (1996) (after remittitur issued, trial court properly found that post-judgment interest was not abated during appeal because plaintiff had been unable to satisfy judgment with funds defendant paid into court registry per OCGA § 9-11-67).

Accordingly, the trial court's order granting the motion for supercedeas bond is reversed to the extent that it abated post-judgment interest.

b. In light of our finding that the trial court lacked jurisdiction during the appeal to abate the post-judgment interest on the judgment, we need not address Mountainbrook's remaining enumerations of error.

17

*Judgment affirmed in part, reversed in part, and vacated in part and case remanded with direction in Case No. A16A0005. Judgment affirmed in part and reversed in part in Case No. A16A0220. Boggs and Rickman, JJ., concur.*