**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 16, 2024**

# In the Court of Appeals of Georgia

A24A1144, A24A1815. SMITH v. BLACKHALL REAL ESTATE, LLC et al. (two cases).

MARKLE, Judge.

In related cases, John Da Grosa Smith appeals from the trial court's orders (1) confirming an arbitration award in favor of Blackhall Real Estate, LLC ("BRE") and numerous other entities that appear to be connected to each other through a common owner, Ryan Millsap; and (2) dismissing his motion to declare the order confirming the arbitration award void, and ordering him to post a supersedeas bond. In Case No. A24A1144, Smith argues that the trial court erred by confirming the arbitration award because (a) some of the entities listed as petitioners did not exist, and the trial court erred by failing to determine whether those entities had standing and whether the arbitrator or the trial court had jurisdiction over them; (b) the

arbitrator lacked jurisdiction over the arbitration because it was preempted by the abusive litigation statute, OCGA § 51-7-85; (c) the trial court erred by denying his motion to vacate the arbitration award; and (d) the trial court erred by denying his motion for sanctions under OCGA § 9-15-14 (a). Finding no merit to the arguments raised in Case No. A24A1144, we affirm the trial court's order confirming the arbitration award.

In Case No. A24A1815, Smith argues that the trial court erred by ordering him to post a supersedeas bond and dismissing his motion to declare void the order confirming the arbitration award. Given our decision in Case No. A24A1144, we dismiss this appeal as moot.

"In reviewing a trial court's order confirming an arbitration award, this Court will affirm unless the trial court's ruling was clearly erroneous. However, we review the trial court's resolution of questions of law de novo." (Citations and punctuation omitted.) *Brooks v. Brooks*, 366 Ga. App. 650 (883 SE2d 880) (2023).

1. *Procedural history*

This appeal arises from an employment dispute between attorney John Da Grosa Smith and his employer, Ryan Millsap, in which Smith represented Millsap

during a business disagreement between Millsap and James Schulz. The case has a lengthy and complicated history, and a full recitation of the facts is set out in detail in our prior opinion, *Smith v. Millsap*, 369 Ga. App. 430 (893 SE2d 833) (2023). We recount only those facts relevant to the instant appeal.

(a) *Underlying litigation*

Smith represented Millsap in a business dispute between Millsap and Schulz arising out of ownership of a movie production company and a sale of property ("the Schulz case"). *Smith*, 369 Ga. App. at 431 (1) (a). That dispute was ultimately referred to arbitration, and Millsap placed money from the sale in the court registry pending the outcome of their arbitration. Id. at 431-433 (1) (a) - (b).

Pleased with Smith's work in the Schulz case, Millsap hired him to be in-house counsel for Millsap's company, BRE. Smith signed an employment contract that obligated him to work for BRE and "related parties" or "affiliated entities." The contract provided for a base salary, a guaranteed bonus, and other incentives that would be at Millsap's discretion. This employment agreement contained a merger clause, and also provided for arbitration as the exclusive remedy over any disputes.

As the Schulz litigation progressed, Millsap removed Smith as lead counsel in the Schulz case. *Smith*, 369 Ga. App. at 432 (1) (b). Thereafter, Smith sent Millsap a text message that he had retained counsel to represent his interests, and that all communication between Smith and Millsap should be directed to their respective attorneys. Smith's counsel then sent Millsap's attorney a letter detailing the work Smith had done that he believed fell outside the scope of their employment contract and for which he believed he was owed compensation. This e-mail included a list of companies for which Millsap had an ownership interest or that he controlled, "and for whom [Millsap individually or as the CEO of BRE] directed . . . that John Da Grosa Smith provide services." These entities included Blackland, LLC; Ora et Labura Trust, LLC; The Ryan C. Millsap Revocable Trust; and Ryan Millsap's Family Trusts, entities that Smith now refers to as "Bogus entities." In the e-mail, counsel advised that if Smith did not receive payment for those alleged extra-contractual services — in the amount of $24 million — counsel would file an attorneys' lien in the Schulz case, which would have affected the pending property sale.

BRE and the other entities Smith identified in his e-mail ("the Claimants") then filed their demand for arbitration, leading to the proceeding at issue in the

current appeal. The Claimants later amended their arbitration claim to specifically allege breach of contract and breach of fiduciary duties, and they requested punitive damages and attorney fees, based on Smith's alleged attempt to extort money from them. Smith filed a counterclaim seeking compensation for his alleged extra-contractual work, and asserting that BRE was the only party properly named in arbitration.

After the Claimants filed their demand for arbitration, Smith's counsel filed an attorneys' lien in the Schulz case "for services rendered." *Smith*, 369 Ga. App. at 432 (1) (b). Smith's counsel also notified the property buyer that there was pending arbitration between Smith and Millsap. In order to finalize the property sale, Millsap was forced to indemnify the purchasers against Smith's claims. Millsap also moved to cancel the lien, noting that the funds he had placed in the court's registry in the Schulz case would protect any claim Smith may have against him. *Smith*, 369 Ga. App. at 432 (1) (b). The trial court granted the motion to cancel the lien, Smith appealed, and we dismissed the appeal for lack of jurisdiction. *Smith v. Millsap*, 364 Ga. App. 162, 169 (1) (874 SE2d 184) (2022).

Ultimately, the arbitration in the Schulz case resulted in an award and order to release some of the funds held in the registry to Schulz. *Smith*, 369 Ga. App. at 433 (1) (c). Smith moved to intervene and filed an appeal. Id. Although the trial court released Schulz's portion of the funds held in the registry, it retained Millsap's share of those funds pending the outcome of Smith's appeal. Id. at 434 (1) (d). Thereafter, in the appeal from Smith's involvement in the Schulz arbitration case, the cancellation of the attorneys' lien, and the release of the funds in the registry, we affirmed the trial court's rulings. *Smith*, 369 Ga. App. at 430, 440. The Supreme Court of Georgia denied Smith's request for certiorari review.

(b) *Arbitration between Smith and Millsap*

The employment dispute between Smith and Millsap proceeded to arbitration. During a week-long arbitration hearing, Millsap testified that he hired Smith to act as chief legal counsel to represent him and all of his companies. He noted that Smith worked at Millsap's direction, and Smith never advised Millsap that he was being asked to do work outside the scope of the employment agreement; nor did he submit any invoices seeking payment for any such work. Millsap denied that he ever agreed to pay Smith for work outside the scope of the contract. Millsap further stated that

6

Smith was aware of the joint venture to sell BRE's assets before Smith was hired as in-house counsel because Smith had worked on the joint venture. Millsap pointed to several e-mail communications from Smith, in which Smith listed other entities Millsap owned or controlled, acknowledging that he represented those companies. And he explained that, when BRE filed for arbitration, it did so naming those companies as claimants because those were the companies Smith named in his e-mail. Millsap denied that there was any other agreement for payment to Smith other than the written contract.

According to Millsap, once Smith hired his own counsel, and would only communicate with Millsap through the attorneys, it became very difficult for Smith to perform his job. Millsap further explained that, during the Schulz litigation, Smith contacted the property buyer and informed him of the lien and the pending arbitration, which damaged Millsap's relationship with the buyer. And when Smith responded to the motion to cancel the lien, he filed an affidavit that contained confidential information.

Smith testified that Millsap hired him as in-house counsel at BRE with the expectation that Smith would perform other work for Millsap personally.[1] He noted that the only written employment agreement was between himself and BRE, but he stated that at the time he was hired, there was also an oral agreement to do work for Millsap personally to "derisk [his] life," and for Millsap's other companies. He explained, however, that discussions about the terms of that oral agreement would have been in text messages, which he could not produce. And he could not say what the terms of that oral agreement were. According to Smith, Millsap said he could not afford to pay for the non-BRE work, but that they would "true it up" later. Smith admitted, however, that the alleged oral agreement pre-dated the written contract, and explained that the oral agreement was the reason why the written contract included language that would permit him to do non-BRE work with BRE's permission. Smith interpreted the text messages from Millsap as permission to do Millsap's personal work. Smith identified his extra-contractual work as the Schulz litigation,

---

[1] Smith alleged that there were numerous text messages with Millsap detailing Millsap's promises to pay, but no one was able to produce any such communications. Millsap testified that he does not retain texts for more than 30 days. And Smith stated he was unable to produce any such text messages from his phone because they were "accidentally deleted."

representation of Millsap in the joint venture, and various trust and estate work, among other responsibilities.[2] Smith could not explain why he felt it necessary to have a written employment agreement for his relationship with BRE, but not for his work with Millsap. He acknowledged that one of the arguments in the underlying Schulz litigation was that Millsap did not honor oral agreements, yet he claimed that he entered into an oral agreement with Millsap prior to becoming in-house counsel. Nor could Smith point to any communication in which he informed Millsap that the work he was being asked to do was outside the scope of the written employment contract.

Smith further testified that, at the time he was hired, he was unaware of the pending deal to sell BRE's only asset, and that, if the deal went through, BRE would have become insolvent and left him unemployed. But he admitted that he did not conduct any due diligence before signing the employment contract. When confronted with an e-mail addressing the joint venture prior to the effective date of his employment contract, Smith denied any recollection of it. Nevertheless, he admitted that he knew BRE was in poor financial shape at the time he became in-house counsel.

---

[2] Despite this testimony at the arbitration hearing, in his earlier deposition, Smith admitted that he did not know if he had any claims against Ora et Labura Trust, and that he was not seeking damages from Blackland, LLC, or the Ryan C. Millsap Revocable Trust.

Looking at the terms of the employment contract, Smith testified that he interpreted the language that he represented BRE "and any related parties" to apply only when BRE was also a party to a suit. As to the language that he have "other related responsibilities as are assigned by the CEO from time to time to the company and/or entity affiliated therewith," Smith testified that he understood that to mean that the duties had to be related to his legal responsibilities.

According to Smith, after he helped renegotiate the joint venture in a way that was beneficial to Millsap, Millsap informed Smith that he had put Smith in the joint venture documents, which Smith understood to be consistent with the agreement that Millsap would pay him for any non-BRE work he undertook. Smith also continued to represent Millsap in the Schulz litigation, in which BRE was not a party. When asked about his own language in one of the communications, "I represented the company — all of the investors — not just Mr. Millsap," Smith stated that he did not mean to suggest he represented anyone other than BRE and that his language was simply "unartfully drafted."

Smith explained that he retained counsel once he became concerned that he would not be fully compensated for his work after he was removed from the Schulz

litigation. He denied that hiring counsel was a repudiation of his employment contract. Smith explained that he authorized his attorney to file the lien before the sale closed because Smith was concerned that once the sale was completed, the money would be gone. But he insisted he was not trying to destroy the deal, and he was not trying to claim any interest in the property. Instead, he explained that he put only as much confidential information in the lien notice as necessary, and he did not make any additional information public until he had to respond to Millsap's filings.

The arbitrator also heard testimony from two experts in legal ethics. The Claimants' expert opined that Smith understood that he represented all of Millsap's companies, as evidenced by the inclusion of those entities on the attorneys' lien and Smith's own affidavit. That expert further testified that Smith breached his fiduciary duty when he refused to communicate with Millsap and then disclosed confidential information in his court filings. On the other hand, Smith's expert opined that Smith's employment contract only involved BRE and did not cover work for any other entity, and that Smith was within his right to file the attorneys' lien.

At the conclusion of the hearing, the arbitrator issued a well-reasoned and comprehensive 66-page order finding Smith breached the contract and his fiduciary

duty, and she ordered Smith to pay $1 in nominal damages, $1.5 million in punitive damages, and $2,226,008.90 in attorney fees. Millsap then filed a motion to release the funds from the court's registry, which the trial court granted, noting that the arbitrator found in Millsap's favor in the employment dispute. *Smith*, 369 Ga. App. at 435 (1) (f).

(c) *Confirmation of arbitration award*

The Claimants then petitioned the trial court to confirm the award. Smith responded that only BRE could seek confirmation because none of the other entities were proper parties to the arbitration. He then moved to vacate the award, arguing that the arbitrator showed a manifest disregard for the law, that some of the entities listed did not even exist and thus could not seek to confirm the award or assert a claim, and that the claims were preempted by the abusive litigation statute. He also moved for sanctions under OCGA § 9-15-14 (a), on the ground that filing the petition for confirmation warranted sanctions because it included numerous so-called "Bogus entities" that he alleged had no standing to pursue claims against him, and it was barred by the abusive litigation statute.

Following a hearing, the trial court confirmed the award. In doing so, the trial court noted the limited statutory basis for vacating an arbitration award under OCGA § 9-9-13 and found that Smith had not satisfied any of those grounds. With regard to the "Bogus entities," the trial court found that Smith invited the error, and waived any objection, by naming those entities in his original threat to sue, and by refusing BRE's offer to dismiss them prior to the entry of the final award. Alternatively, the trial court found those entities to be "de facto" corporations.

Thereafter, Smith filed numerous motions, seeking reconsideration and for discovery. The trial court denied these motions, as well as his motion for § 9-15-14 (a) sanctions. Smith now appeals in Case No. A24A1144.

(d) *Post- confirmation proceedings*

Following the trial court's order confirming the arbitration award, the Claimants moved to order Smith to post a supersedeas bond in the amount of the arbitrator's award. Smith opposed the request, and moved the trial court to declare the orders void, raising the same "Bogus entities" claims and arguing there was no final judgment.

The trial court dismissed the motion to declare the orders void because it lacked jurisdiction once Smith filed his notice of appeal, and it ordered the posting of supersedeas bond. Smith now appeals from that order in Case No. A24A1815.

*Case No. A24A1144*

2. *Smith's appeal of the confirmation order*

On appeal, Smith argues that (a) the trial court erred by failing to determine whether the "Bogus entities" had standing, and whether the arbitrator and the trial court had jurisdiction over them such that the arbitration award could be issued against them or confirmed by the court; (b) the arbitrator lacked jurisdiction because the arbitration was preempted by the abusive litigation statute, OCGA § 51-7-85; (c) the trial court erred by denying his motion to vacate the arbitration award and order a new hearing; and (d) the trial court erred by denying his motion for sanctions under OCGA § 9-15-14 (a). Before we address the merits of Smith's appeal, we set out the relevant law concerning the confirmation of an arbitration award.

> Georgia's Arbitration Code was designed to preserve and ensure the efficacy and expediency of arbitration awards. A primary advantage of arbitration is the expeditious and final resolution of disputes by means that circumvent the time and expense associated with civil litigation. Arbitration is a unique procedure that exists in Georgia due to legislative

14

fiat, and it is conducted in accordance with the rules established by the legislature. By agreeing to arbitrate grievances, contracting parties express their intent to by-pass the judicial system and thus avoid potential delays at the trial and appellate levels. Under the Arbitration Code, trial courts are severely limited in vacating an arbitration award so as not to frustrate the legislative purpose of avoiding litigation by resort to arbitration.

(Citations and punctuation omitted.) *Adventure Motorsports Reinsurance, Ltd. v. Interstate Natl. Dealer Servs.*, 313 Ga. 19, 25 (1) (867 SE2d 115) (2021). Importantly, under OCGA § 9-9-13 (b), a trial court may vacate an arbitration award only where

the rights of that party were prejudiced by: (1) Corruption, fraud, or misconduct in procuring the award; (2) Partiality of an arbitrator appointed as a neutral; (3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; (4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or (5) The arbitrator's manifest disregard of the law.

And, our Supreme Court has explained that "to prove that a manifest disregard of the law has occurred, a party wishing to have an arbitration award vacated must provide evidence of record that, not only was the correct law communicated to an arbitrator,

15

but that the arbitrator intentionally and knowingly chose to ignore that law *despite the fact that it was correct.*" (Emphasis supplied). *Adventure Motorsports Reinsurance*, 313 Ga. at 26 (1). Moreover, "[t]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." OCGA § 9-9-13 (d). And, "[a]n arbitrator has inherent power to fashion a remedy as long as the award draws its essence from the contract or statute." (Citation and punctuation omitted.) *MARTA v. Local Div. 732, Amalgamated Transit Union*, 261 Ga. 191, 195 (2) (a) (403 SE2d 51) (1991).

With these standards in mind, we address each of Smith's arguments in turn, finding no basis to overturn the trial court's confirmation of the arbitration award.

(a) *"Bogus entities"*

In several related enumerations of error, Smith contends that the arbitration award cannot be confirmed because the alleged Bogus entities lacked standing to seek arbitration and confirmation as they were not the real parties in interest, and thus the arbitrator and trial court lacked jurisdiction over them. We disagree.

It is well-settled that a party cannot complain of an error he invited. See *Video Warehouse v. Newsome*, 285 Ga. App. 786, 788 (648 SE2d 124) (2007) ("even if the

16

trial court committed error, Video Warehouse cannot now complain since it induced the error through its own argument in its motion to dismiss. A party will not be heard to complain of error induced by his own conduct, nor to complain of errors expressly invited by him.") (citation and punctuation omitted). Here, Smith expressly listed these alleged Bogus entities in his e-mail demanding compensation, which formed the basis of BRE's breach of contract and breach of fiduciary duty claims. He further agreed at the initial scheduling conference that all the Claimants were proper parties, and he admitted in his own deposition and filings that he was seeking damages against the Ryan Millsap Revocable Trust and the Ora et Labura Trust, two of the entities he now contends are "bogus."

Moreover, the flaw in Smith's argument is his fundamental misunderstanding of an appellate court's authority to vacate an award. As our Supreme Court has explained, "the statutory grounds for vacatur enumerated in OCGA § 9-9-13 (b) are the *exclusive means* by which a court may vacate an arbitration award." (Emphasis supplied.) *Brookfield Country Club v. St. James-Brookfield, LLC*, 287 Ga. 408, 411 (1) (696 SE2d 663) (2010). An arbitrator's alleged incorrect finding that an entity was properly a party to the arbitration does not fit within one of these statutory bases

17

unless the arbitrator expressed her intent to knowlingly ignore the legally correct outcome. *Wells v. Wells-Wilson*, 360 Ga. App. 646, 660 (2) (860 SE2d 185) (2021) (arbitrator's decision regarding which parties were proper parties to arbitration, even if incorrect, was not a basis to vacate award in absence of "concrete evidence" that arbitrator intended to disregard the law) (citation omitted); see also *Adventure Motorsports Reinsurance*, 313 Ga. at 26 (1). Moreover, whether those alleged Bogus entities might lack standing in a court of law does not authorize the trial court to vacate the arbitration award. See OCGA § 9-9-13 (d); see also OCGA § 9-9-3 ("A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit any controversy thereafter arising to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award."). Accordingly, Smith's claims concerning Bogus entities are without merit.[3]

---

[3] We further note that the testimony from the arbitration hearing and BRE's responses to interrogatories included Millsap's acknowledgment that the entities listed as the Claimants were all companies affiliated with BRE or entities over which Millsap had an ownership interest. Thus, there was a basis for the arbitrator to find the alleged Bogus entities were all "related parties" or "affiliated entities," as contemplated by the employment contract.

(b) *Preclusion under OCGA § 51-7-85*[4]

Smith next argues that the arbitrator lacked subject matter jurisdiction because the abusive litigation statute, OCGA § 51-7-85, precluded the breach of contract and breach of fiduciary duty claims, and the arbitrator erred by finding preclusion was an affirmative defense that Smith waived. According to Smith, because the alleged breaches occurred in a court filing of an attorney's lien, OCGA § 51-7-85 barred any claim arising from this conduct. This claim does not warrant relief.

Pretermitting whether the arbitrator correctly found preclusion to be an affirmative defense, the trial court's authority to vacate an arbitration award is limited to the statutory bases in OCGA § 9-9-13 (b). Smith's claim that the abusive litigation statute barred Millsap and BRE from bringing its breach of contract and breach of fiduciary claims does not fall into one of the delineated statutory bases.

---

[4] OCGA § 51-7-85 provides, "no claim other than as provided in this article or in Code Section 9-15-14 shall be allowed, whether statutory or common law, for the torts of malicious use of civil proceedings, malicious abuse of civil process, nor abusive litigation, provided that claims filed prior to such date shall not be affected. This article is the exclusive remedy for abusive litigation." Notably, "[i]t shall be a complete defense to any claim for abusive litigation that the person against whom a claim of abusive litigation is asserted was substantially successful on the issue forming the basis for the claim of abusive litigation in the underlying civil proceeding." OCGA § 51-7-82 (c). Here, Millsap has been successful in his litigation against and involving Smith. See, e.g., *Smith v. Millsap*, 369 Ga. App. 430 (893 SE2d 833) (2023).

Moreover, the abusive litigation statute only applies in civil proceedings, which the statute defines as "any action, suit, proceeding, counterclaim, cross-claim, third-party claim, or other claim at law or in equity." OCGA § 51-7-80 (1). And, "'[c]laim' includes any allegation or contention of fact or law asserted *in support of or in opposition to any civil proceeding, defense, motion, or appeal*." (Emphasis supplied.) OCGA § 5-7-80 (2). Arbitration, however, is a special statutory proceeding — not a civil suit, and the filing of a lien is not a "civil proceeding." See *Kamara v. Mark Anthony Homes*, 362 Ga. App. 596, 597 (869 SE2d 551) (2022) ("An arbitration award confirmation proceeding is a special statutory proceeding, not a civil suit."); *Carl E. Jones Dev. v. Wilson*, 149 Ga. App. 679, 680 (1) (255 SE2d 135) (1979) ("a lien is not civil process and appellants do not state a claim upon which relief can be granted when they contend that the filing of a lien constitutes abuse of process."). Finally, we note that Smith did not raise this issue until after the arbitrator had issued her interim award. For these reasons, there is no merit to Smith's claim that the arbitration was barred by the abusive litigation statute.

(c) *Vacating award under OCGA § 9-9-13 (b)*

Smith next challenges the confirmation of the arbitration award on the grounds listed in OCGA § 9-9-13 (b).[5] We are not persuaded.[6]

"The burden is on the party attempting to vacate the award to demonstrate the existence of a statutory ground for vacating. In deciding whether to confirm or vacate an arbitration award, a trial court's role is severely curtailed so as not to frustrate the purpose of avoiding litigation." (Citations and punctuation omitted.) *Nix v. Scarbrough*, 369 Ga. App. 850, 856 (2) (894 SE2d 658) (2023).

(i) *Whether the arbitrator overstepped her authority*

Smith contends that the arbitrator overstepped her authority by addressing claims against Bogus entities and that were precluded by § 51-7-85.

OCGA § 9-9-13 (b) (3) provides that a confirming court shall vacate an arbitration award only if the court finds that the rights of that

---

[5] Smith does not argue, as he did before the trial court, that the award should be vacated due to impartiality or procedural irregularities, and thus he has abandoned any such arguments. *AU Medical Center v. Dept. of Community Health*, 366 Ga. App. 94, 106 (2) (880 SE2d 275) (2022) ("appellate courts should not be in the business of addressing parties' abandoned arguments" because "it is almost always a better course to decide the appeal the parties bring us, rather than the appeal we might have brought were we in counsel's shoes.") (citation omitted).

[6] In light of our conclusion here that the trial court properly confirmed the award, we need not address Smith's claim that he is entitled to a rehearing before a different arbitrator.

party were prejudiced by an overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made. . . . 'Overstepping,' like the other grounds for vacating arbitration awards is very limited in scope. 'Overstepping' has been described as addressing issues not properly before the arbitrator.

(Citation and punctuation omitted.) *Adventure Motorsports Reinsurance*, 365 Ga. App. at 638 (1); see also *Brooks*, 366 Ga. App. at 656 (2) (b) (i). "[T]his ground does not apply where an issue is properly raised before the arbitrator. The limits of an arbitrator's authority are defined by the parties' arbitration agreement." (Citation omitted.) *Berger v. Welsh*, 326 Ga. App. 290, 293 (2) (756 SE2d 545) (2014).

Here, Smith has failed to show that the arbitrator overstepped her authority. The arbitration clause in Smith's employment agreement specified that

any and all legal disputes or claims arising out of or relating to your employment or the termination of your employment shall be settled exclusively by final and binding arbitration . . . . This arbitration agreement applies to, among other things and without limitation, disputes about the validity, interpretation, or effect of this Agreement. . . . [A]rbitration shall apply to any and all such legal disputes whether asserted against the Company, the Affiliated Entities, and/or any of their officers[.]

22

Thus, per the terms of the contract, the arbitrator had authority to determine whether the affiliated entities — including the alleged Bogus entities — were proper parties, and the arbitrator did not overstep her authority. *Berger*, 326 Ga. App. at 293 (2); cf. *Cate v. Patterson*, 354 Ga. App. 108, 112 (2) (840 SE2d 489) (2020) ("in the absence of an agreement to the contrary, issues of substantive arbitrability are for a court to decide.") (citation omitted).

(ii) *Whether Smith's rights were prejudiced due to corruption and fraud*

Smith next argues that Millsap's repeated misrepresentations concerning the Bogus entities is the type of fraud that would warrant vacating the arbitration award.

The use of the term "corruption" in OCGA § 9-9-13 (b) (1) is intended to connote a "corrupt or dishonest proceedings." (Citation omitted.) *Haddon v. Shaheen & Co.*, 231 Ga. App. 596, 597 (1) (a) (499 SE2d 693) (1998). And, given our holding that there is no merit to Smith's claim regarding the alleged Bogus entities, Smith cannot show that there was any corruption or dishonesty in the proceeding, nor can he show that he was prejudiced by the alleged fraud. *Docs of CT v. Biotek Svcs.*, 369 Ga. App. 804, 811 (2) (894 SE2d 634) (2023) ; see also *Gilbert v. Montlick*, 232 Ga. App. 91, 93 (2) (499 SE2d 731) (1998) ("Having examined the arbitration award, we

conclude that nothing on its face appears to be the result of corruption, fraud, or misconduct . . . . Inasmuch as Gilbert failed to sustain his burden of establishing that the trial court clearly erred in determining that the award was not procured by misconduct, corruption, or fraud foisted upon the arbitrator, we must affirm."); *Haddon*, 231 Ga. App. at 598 (1) (a).

(iii) *Whether the arbitrator exhibited a manifest disregard for the law*

Smith further claims that the arbitrator showed a manifest disregard for the law by ignoring that the claims were barred by the abusive litigation statute, denying his motion to reopen the hearing to address jurisdiction over the Bogus entities, and by holding Smith accountable for actions taken by his former counsel in filing the lien. He also argues that the inequity in the amount of the award, the arbitrator's decision to ignore case law and award unallocated attorney fees, and penalizing him for his prior counsel's conduct shows the arbitrator's manifest disregard for the law.

The concept of manifest disregard has never been the equivalent of insufficiency of the evidence or a misapplication of the law to the facts. It is a much narrower standard, requiring a showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it. Arbitrators must deliberately ignore applicable law to fall within the manifest disregard prohibition in OCGA § 9-9-13

24

(b) (5). Further, a finding of manifest disregard of the law requires (1) that the governing law alleged to have been disregarded is well defined, explicit and clearly applicable, and (2) proof that the arbitrator was aware of the law but decided to ignore it. Thus, an error in interpreting the applicable law does not constitute manifest disregard. . . . [A] party wishing to have an arbitration award vacated must provide evidence of record that, not only was the correct law communicated to an arbitrator, but that the arbitrator intentionally and knowingly chose to ignore that law despite the fact that it was correct.

(Citation and punctuation omitted.) *Nix*, 369 Ga. App. at 857-858 (2) (c). In other words, a simple legal mistake is not enough to show a manifest disregard for the law. See *Brooks*, 366 Ga. App. at 656 (2) (a); see also *ABCO Builders v. Progressive Plumbing*, 282 Ga. 308, 309 (647 SE2d 574) (2007) (explaining that manifest disregard "is an extremely difficult one to make," and offering as an example a situation that "occurred only because the arbitration award itself made an explicit recital of the winning party's argument that the correct law should be ignored rather than followed. In that case, proof of a manifest disregard of the law was blatantly evident on the face of the award. In any other case, similarly clear evidence of the arbitrator's intent to purposefully disregard the law is required").

Here, Smith has not identified a single instance in the 66-page arbitration award that shows the arbitrator knew the correct law and explicitly chose to ignore it. As already determined, the alleged Bogus entities were proper parties to the arbitration and the abusive litigation statute did not preclude the proceedings. Thus, neither of these issues warranted a finding that the award should not be confirmed.

As to Smith's claim that the arbitrator showed a manifest disregard based on the ratio of nominal to punitive damages or by holding him responsible for prior counsel's conduct during the litigation, we see no evidence to support a conclusion that the arbitrator acted with a manifest disregard. Rather, we agree with the trial court that there is "nothing in the Final Award or the final hearing transcript showing concrete evidence of a deliberate decision by [the arbitrator] not to apply the law." The arbitrator reached her decision following a week's worth of testimony and after consideration of thousands of pages of documents. The arbitrator also rejected certain amounts that Millsap argued as damages. But the arbitrator found clear and convincing evidence of egregious intentional misconduct that would justify punitive damages, noting that Smith never disavowed his prior attorney's conduct in relation to filing the lien. Although Smith couches his claim of error as one of manifest

disregard, he actually seeks to have this Court review the sufficiency of the evidence and find it did not rise to the level of punitive damages. Such review is beyond our statutory authority. OCGA § 9-9-13 (b).

Finally, Smith contends that the arbitrator disregarded the law in awarding unallocated attorney fees and basing the award on pre-litgation conduct. But again, he points only to what could be a mistake rather than a concrete showing of a manifest disregard. And he ignores that he agreed during the arbitration proceedings that the arbitrator could award fees under OCGA § 13-6-11 generally. Accordingly, Smith has not shown that the arbitrator acted in manifest disregard by awarding damages or attorney fees.

(d) *Motion for sanctions under OCGA § 9-15-14 (a)*

Finally, Smith argues that he was entitled to sanctions under this statute because Millsap's argument lacked any justiciable issue of law or fact in light of the non-existence of the so-called Bogus entities. He contends counsel admitted these entities did not exist when he offered to drop them from the case. We discern no error.

Under OCGA § 9-15-14 (a),

> [i]n any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to

any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as is just.

Pretermitting whether the statute even applies in an arbitration award confirmation proceeding, in light of our conclusion that the validity of the various entities was not a proper basis to vacate the award, Smith cannot show that Millsap's counsel presented a claim lacking in any justiciable issue. Thus, he is not entitled to sanctions under § 9-15-14 (a).

For the foregoing reasons, we affirm the trial court's confirmation of the final arbitration award and the denial of sanctions under OCGA § 9-15-14.

*Case No. A24A1815*

3. In Case No. A24A1815, Smith appeals from the order granting a supersedeas bond and denying his motion to declare the prior orders void. We conclude that these arguments are moot.

a. *Supersedeas bond*

"We review a trial court's order requiring a supersedeas bond for abuse of discretion." *Gaslowitz v. Stabilis Fund I, LP*, 331 Ga. App. 152, 157 (3) (770 SE2d 245) (2015). Under OCGA § 5-6-46 (a), "upon motion by the appellee, made in the trial court before or after the appeal is docketed in the appellate court, the trial court shall require that supersedeas bond or other form of security be given with such surety and in such amount as the court may require, conditioned for the satisfaction of the judgment in full, together with costs, interest, and damages for delay if the appeal is found to be frivolous."

Smith challenges the trial court's order imposing supersedeas without holding a hearing and without reviewing its jurisdiction. However, his arguments simply reiterate his earlier claims regarding the alleged Bogus entities and lack of jurisdiction.

Our conclusion in Case No. A24A1144 moots Smith's challenge to the supersedeas bond. See *Ruskin v. AAF-McQuay*, 284 Ga. App. 49, 53 (2) (643 SE2d 333) (2007) (because we affirm the main appeal, any appeal from the order to post supersedeas bond is moot).

b. *Void orders*

29

Smith also argues that the trial court erred by refusing to declare its prior orders void. Again, his argument rests on the premise that the alleged Bogus entities could not obtain an arbitration award, they lacked standing, and the trial court lacked jurisdiction. For the reasons discussed in Division 2 (a), we have already rejected those arguments. Regardless, because Smith had already filed his notice of appeal before he filed the motion to declare the orders void, the trial court lacked jurisdiction to rule on that motion.[7] See *Northside Bank v. Mountainbrook of Bartow County Homeowners Assn.*, 338 Ga. App. 126, 133 (4) (a) (789 SE2d 378) (2016) ("[a] notice of appeal divests the trial court of jurisdiction to supplement, amend, alter, or modify the judgment while the appeal of that judgment remains pending.") (citation omitted).

---

[7] Smith's claim that the trial court was inconsistent by finding it had jurisdiction to order a supersedeas bond but lacked jurisdiction over the motion to declare the orders void shows his continued misunderstanding of the proceedings. The trial court properly determined that it lacked jurisdiction over the motion to declare the orders void because Smith had already filed his notice of appeal. *Northside Bank v. Mountainbrook of Bartow County Homeowners Assn.*, 338 Ga. App. 126, 133 (4) (a) (789 SE2d 378) (2016). But the notice of appeal does not divest the trial court of jurisdiction to impose a supersedeas bond. Id.; see also OCGA § 5-6-46 (a) ("upon motion by the appellee, *made in the trial court before or after the appeal is docketed* in the appellate court, the trial court *shall* require that supersedeas bond or other form of security be given[.]") (emphasis supplied).

Thus, the trial court properly dismissed the motion.

*Judgment affirmed in Case No. A24A1144; Appeal dismissed as moot in Case No. A24A1815. Miller, P. J., and Land, J., concur.*